**Electronically Filed
Intermediate Court of Appeals
28578
30-MAR-2012
07:56 AM**

NO. 28578


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
KEVIN MAGSAYO, Defendant-Appellant.


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CR NO. 07-1-1049)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Foley and Ginoza, JJ.)


Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Kevin Magsayo (Magsayo) with one count of second-degree terroristic threatening, in violation of Hawaii Revised Statutes (HRS) § 707-717(1) (1993).[1] Magsayo's wife was

---

[1] HRS § 707-717(1) (1993) provides:

> (1)   A person commits the offense of terroristic threatening in the second degree if the person commits terroristic threatening other than as provided in section 707-716.

HRS § 707-715 (1993) defines the offense of terroristic threatening, in pertinent part, as follows:

(continued...)

the complaining witness (CW) for the charge. A jury found Magsayo guilty as charged. The Family Court of the First Circuit (Family Court)[2/] sentenced Magsayo to one year of imprisonment.

Magsayo appeals from the "Judgment of Conviction and Sentence" (Judgment) filed in the Family Court on April 16, 2007.[3/] On appeal, Magsayo argues: (1) the Family Court violated his right to a fair and impartial jury by reversing its ruling in limine to preclude the admission of a Beretta handgun and its magazine after Magsayo had begun exercising peremptory challenges during jury selection; (2) the Family Court abused its discretion in admitting the Beretta handgun and its magazine into evidence;

---

[1/] (...continued)
        A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another or to commit a felony:

> (1)    With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

At the time relevant to this case, HRS § 707-716 (Supp. 2006) provided:

        (1)    A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:

> (a)    By threatening another person on more than one occasion for the same or a similar purpose;
>
> (b)    By threats made in a common scheme against different persons;
>
> (c)    Against a public servant arising out of the performance of the public servant's official duties. For the purposes of this paragraph, 'public servant' includes but is not limited to an educational worker. 'Educational worker' has the same meaning as defined in section 707-711; or
>
> (d)    With the use of a dangerous instrument.

        (2) Terroristic threatening in the first degree is a class C felony.

[2/] The Honorable Rhonda A. Nishimura presided over the proceedings relevant to this appeal.

[3/] Although Magsayo's notice of appeal was not timely filed, appellate courts have overlooked such error in similar circumstances. See State v. Knight, 80 Hawai'i 318, 323-24, 909 P.2d 1133, 1138-39 (1996). We therefore will address the merits of Magsayo's appeal.

2

(3) the Family Court committed plain error in failing to sua sponte give a limiting instruction regarding Officer Robert King's testimony of what Officer Philip White had told him; (4) the Family Court erred in failing to strike the testimony of Officer White, which Magsayo claims amounted to an improper bolstering of the CW's credibility; and (5) his trial counsel provided ineffective assistance.  We affirm.

I.

A.

At trial, the CW testified that she returned home from work at about 12:30 p.m. and found Magsayo and their two daughters, ages seven and eight, in the living room watching TV. Magsayo was yelling at the youngest daughter, who was crying. The CW told Magsayo to stop.  Magsayo became upset, kept yelling and swearing, and threw the remote control hard against the TV, causing the remote control to break into several pieces.  Magsayo then went into the bathroom and began hitting the bathroom door, causing the doorjamb to break.

The CW took the two girls to a back room and locked the door.  The CW could hear Magsayo in the adjacent room, moving things around as if he was looking for something.  Magsayo asked the CW if she "wanted to see a crazy man."  The CW replied, "[W]e already are seeing a crazy man."  Magsayo continued swearing and then said, "[Y]ou want me put a hole in your head."  The CW replied, "[W]hat?" and Magsayo repeated, "[Y]ou want me put a hole in your head."  The CW knew that Magsayo stored his hunting rifle in the adjoining room and that he also had a handgun, but the CW did not know where the handgun was located.  The CW understood Magsayo's statements to mean that he "might put a hole in [her] head" and this made her scared.  Magsayo had also been acting irrationally for the prior two weeks.

The CW called 911, using a cordless phone, but the call was disconnected.  The CW heard Magsayo walk past the back room, so she opened the door and saw him in the kitchen.  When the CW

3

asked Magsayo why he was "acting like that," Magsayo picked up the kitchen table and threw it down.

The CW heard the phone ringing and answered it in her room. It was the 911 operator. The CW whispered when speaking to the 911 operator because she was scared and did not want Magsayo to hear. The CW was unable to complete her conversation because Magsayo placed his finger on the receiver.

B.

Magsayo testified in his own defense at trial. According to Magsayo, on the day of the charged incident, the CW returned home and they argued about Magsayo's failure to go to work, their finances, and Magsayo's burdening the CW with all the bills. Magsayo became upset. Magsayo threw the remote control against the TV, causing it to break. Magsayo explained that he was not angry, but that he threw the remote control against the TV because the children had been complaining that they could not find it. Magsayo used his head to break the bathroom doorjamb.

After the CW went to the back room and locked the door, Magsayo was in the adjoining room looking for something to unlock the door. According to Magsayo, the CW asked, "What you doing? Looking for your gun?" Magsayo responded, "[N]o, what for?" to which the CW stated, "[You] might as well shoot . . . [yourself] in the head. That way [we] can get money." Magsayo replied that the CW would not get any money if he committed suicide.

The CW eventually opened the door and went upstairs. Magsayo saw the CW in the bedroom talking on the telephone. Magsayo asked the CW to whom she was talking, and when the CW did not answer, Magsayo hung up the phone. The police subsequently arrived.

II.

We resolve Magsayo's arguments on appeal as follows.

A.

Magsayo argues that the Family Court violated his right to a fair and impartial jury by reversing its ruling in

4

limine to preclude the admission of a Beretta handgun and its magazine during jury selection. We disagree.

1.

Magsayo filed a motion in limine seeking to exclude police officer's testimony that four firearms, including a Beretta handgun, were recovered at Magsayo's residence.[4/] He also moved in limine to exclude any statement he made to the police unless the prosecution established that the statement was voluntary. Immediately prior to jury selection, the Family Court held a hearing on Magsayo's motion and the prosecution's request for a voluntariness hearing.

With respect to Magsayo's statements to the police, the parties stipulated that Magsayo voluntarily informed Officer White, the first officer to arrive at the scene, that a handgun (the Beretta) was in the residence in an open fanny pack next to the microwave. Magsayo also clarified that his motion in limine regarding the firearms was limited to excluding police officer's testimony that the police *recovered* the firearms. Magsayo stated that he was willing to "stipulate that there were guns in the house." After being informed of Magsayo's willingness to stipulate regarding these matters, the Family Court granted Magsayo's motion in limine to exclude police officer's testimony about the recovery of the four guns.

Therefore, prior to jury selection, Magsayo was aware that evidence that there were guns in the house and that he informed Officer White that a handgun was in a fanny pack next to the microwave would be admitted at trial. In addition, while the Family Court had ruled that police officer's testimony about the recovery of the guns would be excluded, the Family Court had not specifically been asked to rule on whether the Beretta handgun itself and its magazine could be admitted into evidence.

_____

[4/] Specifically, the following firearms were identified in Magsayo's motion in limine: 1) "P. Beretta Cal. 9 #27623"; 2) "Remington .22 short long or long rifle #1ESS"; 3) "SKS 7.62x39 JCJASFLOMI #11-0728988"; and 4) "Markx Cal.270 Interarms #defaced."

After Magsayo had exercised his second of three peremptory challenges, a prospective juror referred to having no problem with "gun ownership as long as [the gun is] registered and the person owning the weapon is following the law." Magsayo then orally moved in limine to exclude any evidence that Magsayo's guns were not registered. The State eventually agreed to this limitation, but argued that it should be permitted to admit the Beretta handgun into evidence. Magsayo objected, arguing that admitting the gun would be a "back door" way of showing that the gun had been recovered by the police and would be "unfairly prejudicial." Magsayo also argued that permitting the admission of the handgun would be unfair because his questioning of the potential jurors had been based on the Family Court's in limine ruling and his understanding that the handgun would not be admitted. The Family Court stated that it would "revisit the issue," and it allowed the State to admit the Baretta handgun and its magazine, as well as evidence of their recovery, because the admission of such evidence was more probative than prejudicial.

After the Family Court's ruling, Magsayo did not seek to re-question any of the prospective jurors. He also did not ask the Family Court to provide him with additional peremptory challenges.

At trial, Officer White testified that he found a Beretta handgun loaded with a magazine containing bullets ("the handgun evidence") in a fanny pack next to a microwave in Magsayo's residence. The handgun evidence was admitted in evidence over Magsayo's objection.

2.

We conclude that the Family Court's ruling regarding the admission of the handgun evidence during jury selection did not violate Magsayo's right to a fair and impartial jury. Prior to jury selection, Magsayo was aware that evidence that there were guns in the house and that he advised Officer White of the location of a handgun would be admitted at trial. Accordingly,

6

he had the opportunity to question the prospective jurors about their attitude towards firearms. Magsayo has not shown that his right to an impartial jury was substantially prejudiced by any inability to additionally question the prospective jurors about their reaction to a firearm and its magazine being admitted as exhibits. See State v. Altergott, 57 Haw. 492, 499-502, 559 P.2d 728, 734-35 (1997) ("'Absent abuse of his [or her] broad discretion, and a showing that the rights of the accused have been substantially prejudiced thereby, the trial judge's rulings as to the scope and content of voir dire will not be disturbed on appeal.'" (parentheses and citation omitted)). Moreover, after being apprised of the Family Court's ruling, Magsayo did not attempt to re-question any of the jurors or seek additional peremptory challenges. See Hawai'i Rules of Penal Procedure Rule 24(a) (2000) (permitting parties to examine prospective jurors or to supplement the court's examination by requesting further inquiry); State v. Iuli, 101 Hawai'i 196, 205-06, 65 P.3d 143, 152-53 (2003) (citing the defendant's failure to proffer that he would have used the peremptory challenge (which he claimed he was improperly forced to use) to excuse another juror or to request an additional peremptory challenge in concluding that the defendant failed to meet his burden of establishing that his right to exercise a peremptory challenge was denied or impaired). Magsayo's claim that the Family Court's ruling deprived him of a fair and impartial jury is without merit. See Altergott, 57 Haw. at 499-502, 559 P.2d at 734-35; Barcai v. Betwee, 98 Hawai'i 470, 476-77, 50 P.3d 946, 952-53 (2002) (concluding that plaintiffs were required to demonstrate prejudice to obtain relief on their claim that the trial court's reversal of its initial evidentiary ruling violated their right to a fair and impartial jury); Iuli, 101 Hawai'i at 205-06, 65 P.3d at 152-53.

B.

We reject Magsayo's contention that the Family Court abused its discretion in admitting into evidence the handgun evidence.

7

The handgun evidence was relevant to prove the "true threat" requirement for the terroristic threatening offense. The Hawai'i Supreme Court had stated:

> [T]he prosecution [must] prove beyond a reasonable doubt that a remark threatening bodily injury is a "true threat," such that it conveyed to the person to whom it was directed a gravity of purpose and imminent prospect of execution. . . .
>
> . . . .
>
> [A]s a general matter, the prosecution must prove that the threat was objectively susceptible to inducing fear of bodily injury in a reasonable person at whom the threat was directed and who was familiar with the circumstances under which the threat was uttered. Of course, one means of proving the foregoing would be to establish . . . that the threat was uttered under circumstances that rendered it "so unequivocal, unconditional, immediate, and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." But another would be to establish that the defendant possessed "the apparent ability to carry out the threat," such that "the threat would reasonably tend to induce fear of bodily injury in the victim."

State v. Valdivia, 95 Hawai'i 465, 476-77, 24 P.3d 661, 672-73 (2001) (citations, ellipsis points, and brackets omitted; emphases added).

The CW testified that she knew that Magsayo kept his hunting rifle in the residence and that he also possessed a handgun. The admission into evidence of the handgun evidence was highly probative of: (1) whether Magsayo's alleged threat to "put a hole in [the CW's] head" was "objectively susceptible to inducing fear of bodily injury" in a reasonable person in the CW's position "who was familiar with the circumstances under which the threat was uttered"; and (2) whether Magsayo "possessed 'the apparent ability to carry out the threat,' such that 'the threat would reasonably tend to induce fear of bodily injury in [the CW].'" Id. at 477, 24 P.3d at 673 (brackets omitted). In addition, the handgun evidence, by serving to demonstrate and underscore the accessibility of the handgun to Magsayo, was also relevant to showing his intent to terrorize or his reckless disregard of that risk. See State v. Kassebeer, 118 Hawai'i 493, 505-06, 193 P.3d 409, 421-22 (2008) (upholding admission of

handgun in kidnapping-with-intent-to-terrorize prosecution to prove the defendant's state of mind). We conclude that the Family Court did not abuse its discretion in determining that the probative value of the handgun evidence outweighed the risk of unfair prejudice and in admitting such evidence.

C.

Magsayo contends that the Family Court committed plain error in failing to sua sponte give a limiting instruction regarding Officer King's testimony, which related what Officer White had said about the CW's report of Magsayo's alleged threat. Assuming arguendo that the Family Court erred, we conclude that any error was harmless beyond a reasonable doubt.

The CW testified that Magsayo threatened her by twice asking whether she wanted Magsayo to "put a hole in [her] head." In addition, Officer White testified that the CW was crying hard and appeared fearful when she told him that Magsayo had "threatened to kill [her] . . . he had a gun and that he threatened to put a bullet in her head." Magsayo did not object to this testimony, and it was properly before the jury. See State v. Wallace, 80 Hawai'i 382, 410, 910 P.2d 695, 723 (1996) (concluding that evidence admitted without objection or motion to strike is to be treated as competent evidence); State v. Crisostomo, 94 Hawai'i 282, 290, 12 P.3d 873, 881 (2000) (concluding that the defendant waived hearsay argument by failing to object at trial). We conclude that Officer King's testimony, which also referred to the CW's report of Magsayo's alleged threat, was cumulative of other evidence properly before the jury. Accordingly, any error in the Family Court's failure to sua sponte give a limiting instruction regarding Officer King's testimony was harmless. See Crisostomo, 94 Hawai'i at 290, 12 P.3d at 881 (holding that any error in admitting alleged hearsay statements was harmless where such statements were merely cumulative of other evidence properly admitted at trial); State v. Clark, 83 Hawai'i 289, 298, 926 P.2d 194, 203 (1996) (holding that any error in admitting a witness's testimony was harmless

9

where it was merely cumulative of other admissible testimony presented to the jury).

### D.

Magsayo argues that the Family Court erred in failing to strike Officer White's testimony regarding how his evaluation of a person's credibility affected his decision regarding whether to make a police report. Magsayo contends that the Family Court should have stricken Officer White's testimony because it amounted to improper bolstering of the CW's credibility. We disagree.

It was Magsayo who first broached the subject of how Officer White's evaluation of a person's credibility factored into the officer's decision on whether to make a report, in Magsayo's cross-examination of Officer White. Officer White acknowledged that people had lied to him before and that he may still generate a report in those instances. Officer White indicated that he attempts to take action based on information he believes is truthful, but that he may "have no idea" as to whether people are telling the truth.

On redirect examination by the State, Officer White again indicated that he may prepare a report even if he believes the person complaining is lying about the incident. He acknowledged that his "judgment of a person's credibility weighs upon [his] decision to make a report."

We conclude that Officer White's testimony did not constitute improper bolstering of the CW's credibility. Officer White did not directly discuss or express his opinion regarding the CW's credibility or the truthfulness of her allegations. In responding to general questions about his decision on whether to make a report, Officer White simply articulated the rather unsurprising proposition that his judgment about a person's credibility is a factor he considers in deciding whether to make a report. We conclude that the Family Court did not err in failing to strike Officer White's testimony.

E.

Magsayo asserts that his trial counsel provided ineffective assistance by: (1) broaching the subject of whether Officer White considered a person's credibility in deciding to make a report, thereby opening the door to Officer White's testimony on redirect that his judgment of a person's credibility weighed upon his decision on whether to make a report; and (2) failing to specifically ask Magsayo at trial if Magsayo had threatened to put a hole in the CW's head. We disagree.

In her questioning of Officer White, Magsayo's trial counsel sought to elicit Officer White's acknowledgment that people lie to the police, that he cannot always tell if someone is lying, and that he has submitted police reports even when he did not know if the reports were based on truthful information. The evident tactical purpose of this line of questioning was to show that Officer White's making a police report based on the CW's complaint did not mean that the CW's report was truthful. That trial counsel may not have been completely successful in achieving her purpose with this line of questioning is not sufficient to show that she provided ineffective assistance. See State v. Antone, 62 Haw. 346, 352, 615 P.2d 101, 106 (1980) ("Defense counsel's tactical decisions at trial generally will not be questioned by a reviewing court.") Moreover, we have already concluded that the prejudice Magsayo claims resulted from his trial counsel's opening the door -- that is, the improper bolstering of the CW's credibility -- did not occur. Thus, Magsayo has not met his burden of showing that his counsel provided ineffective assistance in questioning Officer White. See State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998).

We also conclude that Magsayo has not shown that his trial counsel provided ineffective assistance as the result of counsel's failure to specifically ask Magsayo whether he threatened to put a hole in the CW's head. Through trial counsel's questioning, Magsayo testified to his version of the

11

incident, which did not include any threats to kill or injure the CW. The clear import of Magsayo's version of the incident was that he did not threaten the CW. Magsayo cites no authority for the proposition that trial counsel provides ineffective assistance if counsel fails to specifically ask a defendant to deny making the alleged threat. Magsayo's ineffective assistance of counsel claim is without merit.

IV.

For the foregoing reasons, we affirm the Family Court's Judgment.

DATED: Honolulu, Hawai'i, March 30, 2012.

On the briefs:

Linda C.R. Jameson
(Law Office of Linda C.R.
 Jameson)
for Defendant-Appellant

Stephen K. Tsushima
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

Chief Judge

*Daniel R. Foley*

Associate Judge

*Lisa M. Ginoza*

Associate Judge

12